IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JENNIFER L. LUCAS,

       Plaintiff,

vs.                                                                                            Civ. No. 02-624 RHS

JO ANNE B. BARNHART,
Commissioner of Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

    1.   This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed January 3, 2003.[Doc. No. 12 ].  Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on January 18, 1999, alleging a disability which began December 1, 1999 due to bipolar disorder, disassociative disorder, post traumatic stress disorder and anxiety. The Reconsideration Disability Report and Plaintiff's testimony at the hearing added fibromylagia, back pain, migraine headaches and a history of polysubstance abuse to the list of Plaintiff's allegedly disabling conditions.

    2.   The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") also denied the application, concluding that Plaintiff could return to her past relevant work as a case aide or that she could perform two other occupations and was therefore not disabled.  The Appeals Council denied review of the ALJ's decision, thus

the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g). At the time of the Commissioner's final decision, claimant was 39 years old, with a GED and relevant work experience as a shoe salesperson, cab driver and caseworker.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) The residual functional capacity finding is not supported by substantial evidence; (2) the ALJ's finding that Plaintiff could return to her work as a case aide is error; and (3) the ALJ erred at step five when he found that Plaintiff could perform other work.

5. In order to qualify for SSI, a person must be "disabled" under the Social Security Act and the accompanying regulations. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In determining whether a claimant qualifies for SSI, Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence. 20 C.F.R. § 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted). At the first four levels of the evaluation, the claimant must show:

(1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

6. At step one of the evaluation process, the ALJ found that Ms. Lucas was not engaged in substantial gainful activity. Tr. at 13. At step two, the ALJ found that Plaintiff's back pain, fibromyalgia, bipolar affective disorder and history of polysubstance abuse were severe impairments and that her migraine headaches were not a severe impairment. Tr. at 13-14. At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 which would render her presumptively disabled. Tr. at 14. The ALJ made alternative step four and step five findings. Step four requires a determination as to whether plaintiff is able to return to past relevant work. If the ALJ ceases the sequential evaluation at step four, he must "review the claimant's residual functional capacity and the physical and mental demands of the work . . . done in the past." 20 C.F.R. § 404.1520(e). Henrie v. United States Dep't of Health & Hum. Serv., 13 F.3d 359, 361 (10th Cir. 1993). The ALJ found at step four that Ms. Lucas could return to her past relevant work as a case aide, and was therefore not disabled. Tr. at 17-18. Assuming that Ms. Lucas could not return to her past relevant work, he made an alternative finding at step five that Plaintiff could work at other jobs that exist in significant numbers in the national economy and was therefore not disabled. Id.

7. Plaintiff testified that she was a resident in a housing program sponsored by St. Martin's Hospitality Center for individuals with a dual diagnosis of mental illness and substance abuse. She said that she received general assistance from the State of New Mexico and that she worked ten hours a week with the Office of Consumer Affairs as a case aide to help people with such a dual diagnosis find housing, food, and transportation to Twelve Step meetings. Tr. at 31-33.

8. Plaintiff testified that her symptoms of fibromylagia began in 1997 or 1998 and that the diagnosis was made about eighteen months prior to the hearing. Tr. at 37. She stated that her mobility was limited and that she was frequently in pain. Id. Plaintiff said she could walk two blocks, could stand for five or ten minutes at a time and generally spent four or five hours a day lying down. Tr at 39-40. She also testified that she suffered from migraine headaches at least one day a week. Tr. at 37.

9. Plaintiff stated in an Albuquerque Metro Central Intake Addiction Severity Index interview on September 5, 2000, that she had abused alcohol for 25 years, methamphetamine for 21 years and cocaine for 20 years. At the time of that interview she stated that she had not used any of those substances for ten months, Tr at 313, and at the hearing on October 21, 2001, she testified that she stopped abusing those substances on November 3, 1999. Tr. at 47.

10. The diagnosis of bipolar disorder predates the medical records that are included in the transcript of this case. Ms. Lucas received treatment for her bipolar disorder primarily through the UNM Mental Health Center and Healthcare for the Homeless. Mental health professionals have provided therapy and prescribed a variety of antidepressants, anti-psychotics, mood stabilizers, anti-anxiety medications, and hypnotics. At the hearing on October 27, 2001, she

testified that she was taking Lithium,( a mood stabilizer), Tr. at 45, Paxil,(an antidepressant), Tr. at 39, Navane, (an antipsychotic), Tr. at 43, and "short term benzodiazepine" ( anti-anxiety) medications. Tr. at 44.  Her  record reflects that she has taken many other psychotherapeutic medications including  Klonopin, Effexor, Depakote, Prozac, Wellbutrin, Amitriptyline, Xanax, Sinequan,  Zoloft,  Zyprexia, and Trazodone.  She has also taken Ambien, Restoril, and other medications for insomnia, Cogentin( presumably to alleviate medication side effects), and at various times, Ultram, Vicodin, and Percocet, for pain.  Tr. at 150-403.

**First alleged error**

11. Ms. Lucas contends that the ALJ's residual functional capacity ("RFC") finding was not supported by substantial evidence. The ALJ found  that Plaintiff had the RFC for "light work with limitations to performing work of a routine repetitive nature not involving much public interaction at a low-moderate stress level." Tr. at 16.  Ms. Lucas argues that the ALJ's finding did not adequately describe the nonexertional limitations resulting from her mental impairments.

12. Social security regulations require that a special procedure  must be followed when evaluating a mental impairment.  42 U.S.C. § 1382c(a)(3)(G). The procedure requires first a careful review of the case record to determine if a mental impairment exists.  Robertson v. Chater, 900 F.Supp. 1520, 1528-29 (D.Kan. 1995); 20 C.F.R. § 404.1520a(b)(1).  At this stage, the procedure requires the Secretary "to record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment contained in . . . [the] case record."  20 C.F.R. § 404.1520a(b)(1).  Upon finding a mental impairment, the Secretary must determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria.  20 C.F.R. § 404.1520a(b)(2).  The

Secretary must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria. Robertson v. Chater, 900 F.Supp. 1520, 1528-29 (D.Kan. 1995), (citing 20 C.F.R. § 404.1520a(b)(3) and Cruse v. U.S. Dep't of Health & Hum. Serv., 49 F.3d 614, 617 (10th Cir. 1995)).  The Secretary must record her conclusions on a standard document, the Psychiatric Review Technique Form ("PRT" form) that tracks the listing requirements and evaluates the claimant under the Part A and B criteria.  Id., Cruse, 49 F.3d at 617.  At the ALJ hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision.  Id. (citations omitted).

      13.  Consulting psychiatrist Dr. Elizabeth Chang reviewed the Plaintiff's record and found evidence of a bipolar affective disorder, a personality disorder and a substance addiction disorder using the Part A criteria.  She found no evidence of an anxiety disorder (including PSTD) as it is defined by the Social Security Administration.  Tr. at 242-248.  Dr. Chang completed the PRT and evaluated Plaintiff under three categories of mental impairment, 12.04, affective disorders, 2.08, personality disorders and 12.09, substance abuse disorders.  Tr. at 242.  In the Part B functional limitations portion of the form Dr. Chang indicated that Ms. Lucas had slight restrictions of activities of daily living and moderate difficulties in maintaining social functioning.  Dr. Chang found that Plaintiff often had deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner and indicated that she had insufficient evidence to opine on whether Ms. Lucas had suffered from episodes of deterioration or decompensation in work or work-like settings.  Tr. at 242-250.

14. Dr. Chang also completed a Mental Residual Functional Capacity Assessment form on Ms. Lucas, finding no significant limitations in sixteen of twenty categories, no limitation in one category, and moderate limitations in her ability to interact appropriately with the general public, her ability to accept instructions and respond appropriately to criticism from supervisors and her ability to set realistic goals or make plans independently of others. Dr. Chang concluded that Ms. Lucas could do work that does not have much public interaction and was not too demanding. DDS consulting psychologist, Dr. Gabaldon, concurred in these findings. Tr. at 238-240.

15. The ALJ did his own detailed analysis of Plaintiff's mental impairments and their impact on her functional capacity. He found that her "bipolar disorder was stabilized with adherence to her treatment regimen" and that she had "moderate functional limitations in social functioning." Tr. at 15. The ALJ stated that Ms Lucas had moderate limitation in concentration, persistence and pace but "no evidence that supports [a finding that] concentration is so impaired as to preclude work activity." Id. He noted that Plaintiff's ability to care for her personal needs, attend therapy sessions and Twelve Step programs, and do volunteer work were evidence that Plaintiff was "able to function at a level to permit work activity in the economy." Id. The ALJ noted that Plaintiff's UNM records show that a lapse in Plaintiff's sobriety did occur in July 2000, but found "that there is no indication that Ms. Lucas is engaging in activities associated with drugs and alcohol and therefore...drugs and alcohol are not material in establishing whether Ms. Lucas is disabled under the Act." Tr. at 15.

16. Ms. Lucas argues that the ALJ improperly ignored the findings from the consulting psychiatrist and psychologist. The ALJ's findings regarding the severity of Plaintiff's functional

difficulties are only slightly different than those noted by the state agency consultants, and their findings are not binding on the ALJ. See Richardson v. Bowen, 807 F.2d 448 (5th Cir. 1987). The ALJ properly considered Plaintiff's daily activities, her medical records and the opinions of the consulting mental health specialists to determine Plaintiff's RFC.  His findings are supported by substantial evidence in the record.

  17. Plaintiff contends that the ALJ also erred by failing to consider the side effects of Plaintiff's medication which she described at her hearing as tremors, nausea, diarrhea, weight loss and fatigue. Tr. at 44. Ms. Lucas has repeatedly complained to health care providers of other side effects of her medications including weight gain, Tr. at 401, 403, agitation and restlessness, Tr at 380, 387, 377, insomnia, Tr. at 375, 388, 390, and memory loss, Tr. at 381, 401. She complained of tremors on one occasion, Tr. at 376, and a Recovery Unlimited Individualized Treatment Plan mentions that she complained of fatigue and attributed that problem to the Epstien-Barr virus. Tr. at 302.

  18. The many treatment notes which described Ms. Lucas as "obese" or "heavy set," the notations by health care providers that Plaintiff was trying to lose weight and her complaints of weight gain from her medications contradict Plaintiff's testimony regarding nausea, diarrhea and weight loss. Her complaint of fatigue is contradicted by her most recent treatment records which state that she claimed her energy level was good, Tr. at 373, 386, 401, 402.  There is substantial evidence that Plaintiff's testimony regarding side effects of her medications was not totally credible, therefore, the ALJ did not err by failing to discuss these alleged side effects of medication in his decision.

**Second alleged error**

19. Plaintiff alleges that the ALJ erred when he determined at step four of the sequential evaluation process that Plaintiff could return to her work as a case aide. The ALJ found that Plaintiff's work as a case aide was not substantial gainful activity. Tr. at 14-15. SGA is "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done . . . for pay or profit." 20 C.F.R. § 416.910; Jozefowicz v. Heckler, 811 F.2d 1352, 1356 (10th Cir. 1987); see also § 416.972. He also found that she could return to this work and was therefore not disabled. Tr. at 17-18. The Commissioner agrees that because Plaintiff's work as a case aide was not substantial gainful activity, it cannot be considered Plaintiff's past relevant work. This portion of the ALJ's decision is contrary to the law and must be reversed.

**Third alleged error**

20. Plaintiff contends that the ALJ erred in making his alternative finding at step five that Ms. Lucas could perform other work. The ALJ relied on testimony from a vocational expert (VE) who responded to a series of hypothetical questions and determined that Ms. Lucas could perform the occupations of office helper and gate guard.

21. The ALJ's decision states that his first hypothetical question for the VE assumed that Plaintiff could lift/carry thirty pounds occasionally, twenty pounds frequently with occasional limitations in climbing, balancing, stooping and reaching. She would be restricted to walking six hours a day and have limitations in overhead reaching. Tr. at 17. He stated that the VE response to that question was that such an individual could not return to Plaintiff's past relevant work. Id. The ALJ states that his second question modified the first by including an alternate sit/stand option, and that the VE responded that such an option would preclude shoe sales but that such an individual could perform the job of office helper or gate guard. Id.

22. The ALJ misstates the record. The ALJ's initial hypothetical assumed that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. Tr. at 52. There were no limitations stated on her ability reach or to walk. Tr. at 52-53. There were additional limitations included in the first hypothetical question that the work she could perform would be of a relatively routine nature and of low to moderate stress. Tr. at 52. The VE's response to the first question was that such a hypothetical would allow Plaintiff to return to past relevant work. Tr. at 53.

23. The ALJ is not bound by the VE's responses to hypothetical questions that assume restrictions not ultimately found by the ALJ to be supported by the record as a whole. See Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ cannot, however, rely on a hypothetical question which was not asked and an answer which was not given. The discrepancy between the hypothetical questions asked of the VE and those recounted in the opinion makes meaningful judicial review of this issue problematic. Furthermore, the definition of a "low to moderate stress" job as "no fast paced work like an air traffic controller or waitress during rush hour", Tr. at 52, did not sufficiently describe the nature of Plaintiff's limitations as found by the ALJ.

24. On remand, the ALJ may again decide that Ms. Lucas is not disabled. That decision must be based on the VE's responses to hypothetical questions which accurately describe Plaintiff's limitations and are sufficiently detailed to allow the VE to render a meaningful opinion.

25. In conclusion, the Court finds that: (1) The ALJ's residual functional capacity finding was supported by substantial evidence; (2) The ALJ erred in finding that Plaintiff could return to her past relevant work as a case aide; (3) The ALJ's finding that Ms. Lucas could perform other work was not supported by substantial evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand for a Rehearing, filed January 3, 2003 [Doc. No. 12] is **GRANTED.** This case is remanded to the Commissioner for the purpose of taking additional vocational expert testimony consistent with this opinion.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE